# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | |
|---|---|
| SUSAN D. CROUCH, | ) |
| | ) |
| | ) Civil Action No. |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RCHP - FLORENCE, LLC, | ) |
| | |
| Defendant. | |

_____

## **COMPLAINT**

### I. JURISDICTION

1. This case is brought pursuant to the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §12101 *et seq.,* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq*. Jurisdiction of this Court exists pursuant to 28 U.S.C. §1331.

2. Plaintiff timely filed her charge with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has filed this suit within 90 days after receipt of her right-to-sue letter issued from the EEOC.

## II. PARTIES

3. Plaintiff Susan D. Crouch ("Plaintiff") is an adult citizen of the United States and a resident of Lauderdale County, Alabama.

4. Defendant RCHP - Florence, LLC ("Defendant") is a corporation headquartered in Brentwood, Tennessee and an employer as that term is contemplated under the ADA.

## III. BACKGROUND

5. Paragraphs 1-4 above are incorporated by reference.

6. In or about 2001, Plaintiff was diagnosed with fibromyalgia.

7. Plaintiff's fibromyalgia causes her to experience pain, fatigue, and problems sleeping, and did so during the events of this case.

8. Defendant owns and operates Shoals Hospital in Muscle Shoals, Alabama and did so during the events of this case.

9. In or about March of 2012, Plaintiff became employed by Defendant at Shoals Hospital.

10. In or about November of 2015, Plaintiff was a Respiratory Therapist ("RT") working the night shift.

11. Phyllis Greene, supervisor over the RT's, asked Plaintiff to temporarily work rotating shifts: sometimes on day shift and sometimes on night shift.

12. Plaintiff's fibromyalgia was and is negatively affected by disruptions to her sleep pattern.

13. Plaintiff's had informed Greene of her fibromyalgia and the negative effect on it caused by sleep pattern disruptions.

14. Plaintiff told Greene that she would work the rotating shifts as long as it was temporary.

15. Greene told Plaintiff that it was.

16. In or about January of 2016, Defendant approved Plaintiff for continuous FMLA leave to have tarsal tunnel release surgery on her foot.

17. On or about January 28, 2016, Plaintiff had the surgery on an outpatient basis.

18. Plaintiff had worked the rotating shifts from November of 2015 until she went off on leave on or about January 28, 2016.

19. While Plaintiff was off on leave convalescing from the surgery, she and Greene exchanged text messages.

20. In one, Plaintiff reiterated that she could not work rotating shifts when she returned to work.

21. Greene replied that they would discuss that when Plaintiff returned to work.

22. Plaintiff was released to return to work on April 20, 2016.

23. Plaintiff notified Greene of this.

24. Greene told Plaintiff that she needed a fitness for duty certification from her doctor before she could return to work.

25. Greene told Plaintiff to bring the certification in on April 19, 2016.

26. Plaintiff did so, at which time Greene immediately took Plaintiff to meet with Nancy Bowling, Defendant's Human Resources Manager at Shoals Hospital.

27. Bowling gave Plaintiff paperwork stating that she was being terminated in a "company wide" reduction in force.

28. The asserted reason for termination was false and pretextual.

29. Plaintiff was in fact the only employee terminated in the "reduction in force."

30. Further, there were other RT's falling below Plaintiff under Defendant's layoff criteria who were retained over Plaintiff.

31. Further, after Plaintiff's termination, Defendant brought over a relief supervisor from Eliza Coffee Memorial Hospital in nearby Florence, Alabama, also owned by Defendant, to work extra shifts to cover some of Plaintiff's shifts.

32. Further, Defendant added other RT's to its workforce at Shoals Hospital during the alleged "reduction in force."

33. Finally, in the termination meeting, Plaintiff asked Bowling about a "PRN" (as needed) position she had seen recently posted.

34. Bowling stated that there were no open PRN positions.

35. This was not true.

36. Defendant thereafter immediately removed the posted position.

## IV. CAUSES OF ACTION

### COUNT I

### ADA

37. Paragraphs 1-36 are incorporated herein.

38. Plaintiff's fibromyalgia constitutes physical and mental impairments under the ADA and did so during the events of this case.

39. Due to these impairments, Plaintiff was and is substantially limited with respect to major life activities under the ADA, including sleeping.

40. Plaintiff is disabled under the ADA and was during her employ with Defendant.

41. Plaintiff is and was during her employ with Defendant a qualified individual able to perform the essential functions of her position with Defendant.


42. Defendant violated Plaintiff's rights under the ADA by terminating her employment because of (a) her disability and/or (b) her request for a reasonable accommodation for her disability.

43. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her in the position she would have occupied in the absence of discrimination (or front-pay), providing back-pay and lost benefits with interest, ordering Defendant to pay compensatory and punitive damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## FMLA

44.  Paragraphs 1-36 above are incorporated by reference.

45.  Defendant was a covered employer under the FMLA during the course of events set forth above.

46.  Plaintiff was an eligible employee under the FMLA during the course of events set forth above, to-wit:

(a) Plaintiff had been employed by Defendant for at least 12 months;

(b) Plaintiff had worked at least 1,250 hours in her service to Defendant; and

(c) Plaintiff was employed at a worksite where 50 or more employees were employed by Defendant.

47.  During the events relevant to this case, Plaintiff's tarsal tunnel syndrome constituted a serious health condition under the FMLA in that it involved a period of incapacity of more than three consecutive, full calendar days that also involved (a) treatment two or more times, within 30 days of the first day of incapacity by a health care provider, and/or (b) treatment by a health care provider on at least one occasion,

which resulted in a regimen of continuing treatment under the supervision of the health care provider, as well a subsequent period of incapacity relating to the same condition, pursuant to 29 C.F.R. §825.115(a).

48. In terminating Plaintiff, Defendant violated her rights under the FMLA by (a) interfering with her right to take leave covered by the FMLA, and/or (b) retaliating against her for availing herself of her rights under the FMLA.

49. Defendant knew, or showed reckless disregard for whether, its termination of Plaintiff violated the FMLA.

50. Defendant acted in willful violation of the FMLA.

51. As a result of the above described unlawful acts, Plaintiff has been made to suffer lost wages and other benefits.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions violated the FMLA;

(ii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her in the position she would have occupied in the absence of Defendant's violation of her FMLA rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of

employment with interest, ordering Defendant to pay liquidated damages, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violating Plaintiff's FMLA rights;

(iv) That the Court award such other available legal and equitable relief as is warranted, including, but not limited to, an award of costs and expenses, attorney's fees, and expert witness fees.

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
State Bar. No. ASB-2472-P75A
Adam M. Porter, LLC
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Telephone: (205) 322-8999
Facsimile: (205) 402-4619
Email: adamporter@earthlink.net

Plaintiff requests trial by struck jury.

s/ Adam M. Porter
Attorney for Plaintiff

<u>Defendant's Address:</u>
RCHP - Florence, LLC
c/o C T Corporation System, Registered Agent
2 North Jackson St., Suite 605
Montgomery, AL 36104